UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In re the matter of: | Case No. 1:10-CV-00175-EJL |
| DOUGLAS L. SWENSON, JEREMY SWENSON and DAVID SWENSON, | **MEMORANDUM DECISION AND ORDER** |
| Petitioners, | |
| v. | |
| BUSHMAN INVESTMENT PROPERTIES, LTD, a Utah limited partnership, HOLMAN DBSI ARAPAHOE, LLC, a Utah limited liability company, JOHN M. CLAYTOR, as co-executor of the Estate of William M. Claytor, CHARLEY A. SIMMONS, SHIRLEY A. SIMMONS, LINDA GRANA, WILLIAM J. MURPHY, and JOSEPH KLEM AND ANNA KLEM 2003 REVOCABLE TRUST, | |
| Respondents. | |

**MEMORANDUM DECISION AND ORDER - 1**

## INTRODUCTION

In January 2012, an Arbitrator awarded the Respondents in this case $458,146.81 in damages, $457,995.59 in fees, and an additional $2.27 million in "potential prospective" damages in the event of certain contingencies.   The Respondents moved to confirm the arbitration award (Dkt. 27) and the Petitioners moved to vacate it.   (Dkts. 49, 57.)   This Court vacated one ambiguous portion of the award and remanded that portion of the award to the Arbitrator for clarification. (Dkt. 78.)   The Court confirmed the Arbitrator's award in all other respects.   (*Id*.) On July 27, 2012, the Arbitrator issued a Decision Clarifying Final Award and a new Final Award.   (Dkt. 82-1.)   Respondents have again moved to confirm the arbitration award, and Petitioner Douglas Swenson again seeks to vacate it.   (Dkts. 90, 100.)   In addition, on January 9, 2013, Petitioner sought leave of this Court to file supplemental briefing regarding the effect of certain related proceedings involving the parties and the property at issue in this proceeding.   This Court granted the motion, and Petitioner filed a supplemental brief on March 28, 2013. (Dkt. 129.)   Respondents replied to Petitioner's supplemental brief on April 11, 2013.   (Dkt. 131.)   Pending before this Court are:

(1)   Petitioner Douglas Swenson's Motion to Stay Action on Respondents' Proposed Order until October 27, 2012, or, in the alternative, Motion for Status Conference to set Briefing Schedule (Dkt. 86);

(2) Petitioners David Swenson and Jeremy Swenson's Motion to Stay Action on Respondents' Proposed Order until October 27, 2012, or, in the alternative, Motion for a Status Conference to set Briefing Schedule (Dkt. 88);

(3) Respondents' Motion for Entry of Final Judgment on Arbitration Award as Clarified, or, Alternatively, for Entry of Partial Final Judgment on Previously Confirmed Portions of the Arbitration Award (Dkt. 90);

(4) Respondents' Motion for Post-Award, Pre-Judgment Interest (Dkt. 96); and

(5) Petitioner Douglas Swenson's Motion to Vacate, Modify, or Correct (Dkt. 100.)

The motions have been fully briefed and the Court has determined oral argument would not assist the decision-making process.   The Court will therefore decide the motions without a hearing.   For the reasons below, the Court will enter partial final judgment on all portions of the first final award that the Court previously confirmed and will vacate one aspect of the prospective damages portion of the Arbitrator's second final award.   Because the prospective damages portion of the Arbitrator's award may entitle Respondents to additional damages in the event of

**MEMORANDUM DECISION AND ORDER - 3**

certain contingencies, which may or may not occur, the Court will administratively terminate this case, with leave to reopen the proceedings for good cause shown, for the entry of any stipulation or order, or for any other purpose required to obtain a final determination in the litigation, in the event such contingencies arise. Respondents' Motion for Entry of Final Judgment on Arbitration Award is thus **GRANTED** in part and **DENIED** in part.   Petitioner Douglas Swenson's Motion to Vacate, Modify, or Correct is **GRANTED** in part and **DENIED** in part.   Because Petitioner Douglas Swenson has filed his Motion to Vacate, Petitioners' Motions to Stay the Action (Dkts. 86, 88) to allow time to file a Motion to Vacate are **MOOT**. Finally, Respondents' Motion for Post-Award, Pre-Judgment Interest (Dkt. 96) is **DENIED**.

## BACKGROUND

Respondents Bushman Investment Properties, *et. al*., are a group of real estate investors (hereinafter, the "Investors").   In the fall of 2008, the Investors purchased fractional interests in a piece of vacant land in Arapahoe County, Colorado, legally described as: Tract B, Cross Creek Subdivision Filing No. 1, County of Arapahoe, State of Colorado (hereinafter, the "Property"), from a business known as DBSI E-470 East LLC ("DBSI E-470").   At the time, DBSI E-470 was a wholly owned and managed subsidiary of DBSI, Inc.   DBSI, Inc., in turn, was a real estate

**MEMORANDUM DECISION AND ORDER - 4**

investment company based in Boise, Idaho.   Petitioner Douglas Swenson (hereinafter "Mr. Swenson") is the former president, CEO, and majority owner of DBSI, Inc.   Mr. Swenson's sons, Petitioners Jeremy and David Swenson, were employees of a DBSI affiliate called DBSI Realty.

Pursuant to their purchase of fractional interests in the Property by virtue of a Purchase Agreement and Escrow Instructions (hereinafter "Purchase Agreement"), the Investors owned a 63.497 % interest in the Property as tenants in common with DBSI E-470, and DBSI E-470 owned the remaining 36.503% interest in the Property as a tenant in common with the Investors.   The Investors alleged that, despite various oral and written representations made in the course of their purchase of the Property that the Property was not encumbered by any debt, Mr. Swenson had in fact executed a deed of trust encumbering the Property (hereinafter the "Deed of Trust") that ran in favor of DBSI 2006 Secured Notes Corporation, an affiliate of DBSI, Inc.   The Investors brought various claims against DBSI E-470 and the Swensons, including breach of the Purchase Agreement and fraud, but could not assert claims against DBSI 2006 Secured Notes Corporation because that entity was in bankruptcy proceedings at the time the Investors filed suit.

The Investors originally sued DBSI E-470 and the Swensons in March 2009 in United States District Court for the District of Colorado.   The Investors claims

**MEMORANDUM DECISION AND ORDER - 5**

against DBSI E-470 were stayed because DBSI E-470 filed bankruptcy in June

2009.   (*In re DBSI E-470*, Case No. 09-12117 (D. Del. Bank. 2009)).   The

Swensons sought to compel arbitration, but the Colorado District Court concluded it

lacked jurisdiction to compel arbitration over the Investors claims against the

Swensons in Idaho, and ordered the Swensons to commence an action in Idaho

seeking to compel arbitration.   This action ensued.

In July 2010, this Court ordered the parties to commence binding arbitration.

(Dkt. 19.)   An arbitration before the American Arbitration Association was held

from June 27 through July 1, 2011.   In September 2011, the Arbitrator issued an

Interim Award finding that the DBSI E-470 corporate veil should be pierced, that all

three of the Swensons were liable for breach of the Purchase Agreement with the

Investors, and that Mr. Swenson was liable for fraud.   (Dkt. 52-1.)   In November

2011 the Arbitrator held another hearing to address a variety of damages issues.   On

December 14, 2011, the Arbitrator issued a Final Award regarding damages and

then, upon motion of the Swensons, clarified that Final Award in January 2012

(collectively referred to hereinafter as "2011 Final Award").[1]   (Dkts. 52-2, 52-3.)

---

1 The Arbitrator modified the Final Award because it contained a computational error
allowing for recovery of both $395,459.07 held in Accountable Reserves for the Property
and $458,146.81 needed to both pay off the Arapahoe County tax lien on the Property and
account for land management costs the Investors had incurred.   Because the Accountable
Reserves were, pursuant to the Purchase Agreement, to be used to pay land management
costs and taxes on the Property, awarding damages for both the Accountable Reserves and

MEMORANDUM DECISION AND ORDER - 6

The Swensons thereafter sought to vacate the Arbitrator's 2011 Final Award on multiple grounds, including that the Arbitrator manifestly disregarded the law by: (1) piercing the corporate veil to hold all three Swensons personally liable for contractual obligations of DBSI entities; (2) "excusing" the investors from proving various elements of fraud; (3) violating Mr. Swenson's Fifth Amendment rights against self-incrimination; and (4) awarding "potential prospective" damages to the Investors.   (Dkts. 50, 57.)   This Court determined the Swensons had failed to demonstrate that the Arbitrator manifestly disregarded the law, as required under 9 U.S.C. §10(a), with respect to any of these four issues.   (Dkt. 78.)

In addition, Jeremy and David Swenson sought to vacate the award due to the Arbitrator's "evident partiality," while Mr. Swenson raised various facts to show that the Arbitrator imperfectly executed his powers.   The Court determined the Swensons had not established that the 2011 Final Award should be vacated due to the Arbitrator's "evident partiality," or that the Arbitrator imperfectly exercised his powers.  (Dkt. 78.)

The Court accordingly confirmed all aspects of the 2011 Final Award, with the exception of one isolated portion of the potential prospective damages award.

---

the overdue taxes on the Property would provide the Investors with a double recovery. Upon motion by the Swensons, the Arbitrator reduced the initial damages award of $853,605.88 by $395,459.07, to arrive at actual damages of $458,146.81.   (Dkts. 52-2, 52-3.)

**MEMORANDUM DECISION AND ORDER - 7**

The Court rejected the Swensons' claim that the prospective damage award was improper because it was not reasonably certain, as well as Mr. Swenson's causation arguments as they related to a potential foreclosure of the Deed of Trust.   (Dkt. 78, p. 27.)   However, the Court found ambiguity in the potential prospective damages award in one isolated respect.   The Court vacated the 2011 Final Award solely with respect to one aspect of the potential prospective damages award, and remanded to the Arbitrator for the limited purpose of clarifying the potential damages award regarding this issue.

In order to understand the Court's remand order, it is necessary to summarize the parties' damages positions at the arbitration, as well as the component parts of the Arbitrator's damages award.   At the arbitration, the Investors argued that their entire $2.7 million investment in the Property had been destroyed because the Property—which was supposed to be debt free—was encumbered with the undisclosed Deed of Trust securing a promissory note in the amount of almost $2.8 million, as well as a county tax lien.   The Swensons argued that the Deed of Trust had been partially released, which meant that even if the Deed of Trust was foreclosed, the Investors would retain their interest in the Property, and thus receive exactly what they bargained for.   The Investors countered that the partial release

**MEMORANDUM DECISION AND ORDER - 8**

was invalid, and that they would accordingly lose their interests in the Property upon foreclosure of the Deed of Trust.

The Arbitrator concluded the Investors were entitled to $458,146.81, which represented the amount needed to pay off the county tax lien, plus land management costs the Investors had incurred.   (Dkt. 52-2, pp. 4-5; Dkt. 52-3, p. 3.)   The Arbitrator did not accept the Investors' claim that they had lost their entire $2.7 million investment in the Property.   The Arbitrator instead accepted testimony from the Swensons' expert witness finding that the partial release was valid.   The Swensons' expert witness testified that if the partial release was valid, and the holder of the Deed of Trust foreclosed the property, it would only be able to foreclose upon the interests of DBSI Liquidating Trust [the successor in the DBSI E-470 bankruptcy proceeding to the remaining 36.5% interest in the Property], and could not foreclose upon the Investors' interests in the Property.   Consequently, the Arbitrator found the Investors' interest in the Property was not diminished by the Deed of Trust.   (Dkt. 52-2, p. 4.)   The Arbitrator thus did not award the Investors damages to compensate for their entire $2.7 million investment in the Property. However, the Arbitrator also ruled that if the expert testimony regarding the validity of the partial release was mistaken, and the partial release was not valid, the Investors *would* lose their entire investment in the Property.   In addition, if the

Property was foreclosed due to the county tax lien, the Investors would also lose their entire investment in the Property.[2]   The Arbitrator thus awarded prospective damages in the amount of $2.27 million to account for both of these contingencies. The 2011 Final Award called for "potential prospective" damages against Mr. Swenson to be triggered if the Investors lost their interest in the Property due to either a foreclosure of the Deed of Trust or due to the county tax lien.   (*Id.*, p. 5.)

The Court determined the Arbitrator's prospective damage award in the event of a Deed of Trust foreclosure was not ambiguous, and affirmed the portion of the award allowing for prospective damages if the partial release was ultimately deemed invalid and the Investors lost their interest in the Property due to a foreclosure of the Deed of Trust.   (Dkt. 78, pp. 26-27.)   However, the Court also held that the 2011 Final Award was ambiguous with respect to whether the Investors would lose their interests in the Property, and thus be entitled to potential prospective damages, if the Investors failed to pay their share of the tax lien, and the Property was foreclosed upon due to the county tax lien.   (*Id.*, p. 28.)   The Court noted that the Arbitrator may have assumed (1) that Mr. Swenson would promptly pay the damages award; and (2) that the Investors would use the damage award to pay their share of the tax

---

2  As of June 26, 2012, Arapahoe County, Colorado held three real property tax lien certificates for the Property.   (Dkt. 82-1, p. 5.)   As of December 31, 2012, delinquent taxes on the Property were $573,497.05.   (*Id.*)   The tax lien certificates apparently will not be sold unless they remain unpaid by November, 2013.   (*Id.*)

**MEMORANDUM DECISION AND ORDER - 10**

lien.   (*Id*.)   However, as this Court noted, these assumptions were not expressly stated in the Arbitrator's 2011 Final Award.   (*Id*., n. 6.)   Because an arbitration award cannot be enforced if it is ambiguous, the Court vacated this limited portion of the 2011 Final Award and remanded to the Arbitrator for clarification.[3]   (*Id*., p. 29, *citing 2 Domke on Commercial Arbitration* § 33:6.)   The Court confirmed the 2011 Final Award in all other respects.   (*Id*., p. 32.)

Pursuant to the remand order, the Arbitrator clarified that the Investors are not obligated to pay their share of the real estate taxes.   (Dkt. 82-1, p. 2.)   However, in the 2011 Final Award, the Arbitrator had determined that the Investors were entitled to recover $443,479.71 from Mr. Swenson, the payoff amount of Arapahoe County's tax lien, as of the end of November 2011, as well as $14,356.10 in land management costs the Investors had incurred (a total of $458,146.81 in actual damages).   (Dkt. 52-2, pp. 4-5.)   Upon remand, the Arbitrator found that if the Investors receive the tax pay-off amount of $443,479.71 from Mr. Swenson, they must then apply this amount to the delinquent Property taxes, or purchase tax lien certificates for the Property, in order to be entitled to prospective damages in the event the Property is tax forfeited.   (Dkt. 82-1, pp. 7-8.)

---

3  Because the Arbitrator only awarded potential prospective damages against Mr. Swenson, the ambiguity regarding this award, and thus the Court's remand order and the Arbitrator's 2012 Final Award, do not affect or otherwise involve David or Jeremy Swenson.

**MEMORANDUM DECISION AND ORDER - 11**

On October 5, 2012, Mr. Swenson filed a Motion to Vacate both the 2011 Final Award and the July 27, 2012 Decision Clarifying Final Award (hereinafter "2012 Final Award.")[4]   (Dkt. 100-1.)   Mr. Swenson's Second Motion to Vacate alleges that, in the 2012 Final Award, the Arbitrator changed the prospective damage award language of the 2011 Final Award so that prospective damages would be triggered for any foreclosure, regardless of whether the partial release of the Deed of Trust is valid or invalid.   (*Id.*, p. 7, *stating*, "[i]n the 2012 Final Award, however, the Arbitrator makes no reference to the contingency that his findings as to the validity of the partial release would have to be found to have been mistaken before a foreclosure could trigger prospective damages.").   Because the 2012 Final Award allegedly omitted this contingency, Mr. Swenson argues the Investors could trigger prospective damages by consenting to a foreclosure of the Deed of Trust, despite the valid interest the Arbitrator previously ruled the Investors held (due to the partial release) in the Property.   (*Id.*, pp. 7, 10-11.)

The Second Motion to Vacate also challenges the Arbitrator's finding that the Investors are not obligated to pay the real estate taxes unless they receive the tax

---

4  In addition to the July 27, 2012 Decision Clarifying Final Award, the Arbitrator also issued a new "Final Award" on July 27, 2012 to summarize and consolidate the December 14, 2011 Final Award, the January 24, 2012 Modification of Final Award, and the July 27, 2012 Decision Clarifying Final Award.   (Dkt. 82-1.)   To avoid confusion, the July 27, 2012 Final Award and July 27, 2012 Decision Clarifying Final Award will be collectively referred to herein as "2012 Final Award."

**MEMORANDUM DECISION AND ORDER - 12**

pay-off amount of $443,479.71 from Mr. Swenson.   (*Id*., pp. 7-8.)   Finally, the Second Motion to Vacate suggests both the 2011 Final Award and the 2012 Final Award must be vacated because the Arbitrator exceeded his authority by determining Mr. Swenson's liability through claims against DBSI E-470, an indispensable party, and in violation of the automatic bankruptcy stay.

The Court will address each of these arguments in turn.   Before doing so, however, several recent events, which are relevant to Mr. Swenson's Second Motion to Vacate, took place after the Arbitrator issued the 2012 Final Award.   On April 17, 2012, before entry of the 2012 Final Award, Conrad Myers, the Trustee of the DBSI Real Estate Liquidating Trust (the "Trustee"), brought an action to foreclose the Deed of Trust encumbering the Property in Arapahoe County Court (hereinafter "foreclosure action").   (Dkt.   94-3.)   On August 2, 2012, five days after the Arbitrator entered the 2012 Final Award, the Investors consented to a foreclosure of the Property.   (Dkt. 94-4, p. 3, ¶16, stating Investors had "no objection" to entry of a foreclosure judgment.)   The following day, August 3, 2012, the Arapahoe County Court entered its Judgment and Decree of Foreclosure.   (Dkt. 94-5.)   Foreclosure of the Property was scheduled to occur on December 20, 2012.   (Dkt. 115, Ex. A, p. 2.)

**MEMORANDUM DECISION AND ORDER - 13**

In the foreclosure action, the Trustee argued the foreclosure was proper because the partial release of the Deed of Trust was void or voidable.   (If the partial release was valid and the lien had been properly released, foreclosure of the Investors' 63.5% interest in the Property could not occur.)   The Investors did not file responsive pleadings in the foreclosure action and did not otherwise object to the foreclosure.  (*Id.*)   Mr. Swenson filed a Motion to Intervene and Motion for Temporary Restraining Order in the foreclosure action on December 15, 2012. (*Id.*)   In his Motion to Intervene, Mr. Swenson argued that if the foreclosure went through he would be subject to the conditional arbitration award without first having any opportunity to argue the validity of the partial release.   (*Id.*)

On December 18, 2012, the Arapahoe County Court heard argument from the Trustee, the Investors and Mr. Swenson.   During this hearing, the Investors conceded that they did not respond to the Trustee's Complaint for Foreclosure, and thereby acceded to the Trustee's attempt to foreclose on the Property.  (*Id.*)   Mr. Swenson maintained that the partial release was valid, and therefore that the foreclosure should be stopped.  (*Id.*)   The Trustee argued that the partial release was "void or voidable" because there had been no approval by the Bankruptcy Court

to obtain the release, but admitted that the Bankruptcy Court had not issued a ruling concerning the validity of the partial release.[5]   (*Id.*, pp. 2-3.)

On December 19, 2012, the Arapahoe County Court vacated the August 3, 2012 Judgment and Decree of Foreclosure.   (*Id.*)   In so holding, the Arapahoe County Court held the partial release had been properly recorded in Arapahoe County and that under Colorado law it is presumed valid unless the Trustee could present evidence to prove its invalidity.   (*Id.*)   The Arapahoe County Court determined the Trustee could not overcome the presumption of validity "simply by the failure of [the Investors] to assert a defense based on the Release[.]"   (*Id.*)   The Court also noted that both the Investors and the Trustee had failed to advise the Court of the Arbitrator's ruling that the partial release was valid.[6]   (*Id.*)   The Court

---

5 The Trustee's primary argument to void the partial release was that it was issued after the bankruptcy proceedings initiated, and was thus an unauthorized post-petition transfer. (*Id.*)   The Arapahoe County Court found the determination of the validity of the release was a core proceeding that must be resolved by the Bankruptcy Court.   (*Id.*)

6 The Arapahoe County Court explained:

On August 3, 2012 the Court granted Trustee's proposed Judgment and Decree of Foreclosure.   A foreclosure of the subject property is presently scheduled for December 20, 2012.   This Court was unaware at the time Judgment was entered that [the Investors] had been involved in litigation with Swenson over the purchase of the subject property.   In March 2009 [the Investors] had filed a Complaint against Swenson in federal district court in Colorado (Case No. 09-674 (D. Colo.))   That case was heard in an arbitration proceeding in Idaho.   One of the issues litigated in the arbitration was the validity of the Release referenced in the Foreclosure action.   The Arbitrator stated that '[the Investors] are not entitled to the purchase price of $2,729,186.13 …because that Deed of Trust has been partially released.'

(*Id.*, p. 2.)

**MEMORANDUM DECISION AND ORDER - 15**

concluded, "[u]nless or until the Court is provided with a ruling from the Bankruptcy Court that the Release is void or voidable the Release recorded with the Clerk and Recorder is presumed valid and therefore no Foreclosure action can proceed against [the Investors'] interest in the subject property."[7]   (*Id*.)

On February 13, 2013, the Trustee filed a motion in the Delaware Bankruptcy Court asking that Court to find the partial release was void and that the Property should be foreclosed.   (Dkt. 130, Ex. B.)   In support of the motion, the Trustee relied on a settlement between the Trustee and the Investors in which the Investors agreed not to oppose the (now vacated) foreclosure.   (*Id*., ¶¶15-16, 22-25, 27-29.) Mr. Swenson opposed the Trustee's motion on a number of grounds, including Bankruptcy Rule 7001, which requires an adversary action to "determine the validity, priority, or extent of a lien or other interest in property."   (Dkt. 130, Ex. C, pp. 1-3, ¶¶1, 5.)   A hearing on the Trustee's Motion was held on April 4, 2013. (Dkt. 132, Ex. 1.)   The Investors claim Mr. Swenson ultimately settled his objections to the Trustee's Motion.   (Dkt. 131, p. 3.)   However, to the Court's knowledge, and upon review of the docket for the Delaware Bankruptcy Court

---

7  This Court granted Mr. Swenson leave to file Supplemental Briefing regarding the effect of the Arapahoe County Court's Order, as well as the effect of the Investors' representations in a Colorado title dispute action, on Mr. Swenson's Second Motion to Vacate.   (Dkt. 128.)

**MEMORANDUM DECISION AND ORDER - 16**

action, *In re DBSI*, Case No. 08-12687-PJW (D. Del. Bank. 2008), the Delaware

Bankruptcy Court has yet to rule on the validity of the partial release.

In addition to the Arapahoe County Court's December 19, 2012 Order

vacating the Deed of Trust foreclosure of the Property, Mr. Swenson also sought and

obtained leave to brief the effect of certain representations the Investors made in an

action they filed in Colorado state court against the title insurer for the Property.

(Dkt. 128.)   Specifically, on July 6, 2012, the Investors filed suit against

Commonwealth Land Title Insurance Company, Lawyers Title Insurance

Corporation, and Pioneer Title Company, the title insurers and closing agent the

Investors utilized in connection with their purchase of the Property, for failing to

disclose the Deed of Trust in favor of DBSI 2006 Secured Notes Corporation

(hereinafter the "Title Insurance Action.")   (Dkt. 115, Ex. B.)

Mr. Swenson alleges that, in the Title Insurance Action, the Investors claim

that one form of relief they had sought in the arbitration was "removal of the

Undisclosed Lien."   (Dkt 114-1, p. 4, *citing* Dkt. 115, Ex. B, ¶22.)   In his Second

Motion to Vacate, Mr. Swenson argued that DBSI 2006 Secured Notes Corporation

and DBSI E-470 were indispensable parties to the arbitration, and that the entire

arbitration must be vacated because it proceeded without such parties.   (Dkt. 100-1,

pp. 16-17.)   The Investors responded that DBSI 2006 Secured Notes Corporation

**MEMORANDUM DECISION AND ORDER - 17**

and DBSI E-470 were not indispensable parties to the arbitration because all of the Investors' claims for relief were against Mr. Swenson alone.   (Dkt. 105, p. 11.)   In his Second Motion to Vacate, Mr. Swenson argues that, because the Investors allegedly claimed in the Title Insurance Action that they sought removal of the undisclosed Deed of Trust in arbitration (a remedy only the lienholder, DBSI Secured Notes Corporation 2006, could provide), the Investors have taken inconsistent positions in this action and the Title Insurance Action.

Mr. Swenson suggests the Title Insurance Action illustrates the Investors' claims are against DBSI 2006 Secured Notes Corporation, and not against Mr. Swenson.   (Dkt. 129, p. 7.)   Mr. Swenson thus maintains the Investors' claim in the Title Insurance action that they sought relief against a DBSI entity in the arbitration supports Mr. Swenson's claim, in his Second Motion to Vacate, that the arbitration should be vacated for failure to join an indispensable party.   (*Id*., p. 8.) Mr. Swenson claims the arbitration should be vacated under 9 U.S.C. § 10(a)(4) because the Arbitrator exceeded his powers in entering an award against Mr. Swenson in the absence of indispensable parties.

## STANDARD OF REVIEW

The Federal Arbitration Act authorizes district courts to enforce or vacate an arbitration award entered pursuant to a contractual arbitration agreement between

**MEMORANDUM DECISION AND ORDER - 18**

parties.   9 U.S.C. §§ 9-11.   Pursuant to 9 U.S.C. § 10(a), a court may vacate an

arbitration award if:

> (1)  …the award was procured by corruption, fraud, or undue means;

> (2)  …there was evident partiality or corruption in the arbitrators, or either of them;

> (3)…the arbitrators were guilty of   misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

> (4)…the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

Although Mr. Swenson's Second Motion to Vacate raises multiple theories

upon which this Court should allegedly vacate both the 2011 Final Award and the

2012 Final Award, these theories primarily arise under 9 U.S.C. §10(a)(4), or that

the Arbitrator exceeded his authority, or so imperfectly executed his powers that a

mutual, final and definite award upon the subject matter submitted was not made.[8]

---

8  The only theories Mr. Swenson raises for vacating the award that do not arise under 9 U.S.C. §10(a)(4) are his claims that the award was procured by undue means, due to the

The Ninth Circuit strictly interprets the standard set forth in 9 U.S.C.

§10(a)(4), and emphasizes that " 'review of the award itself is both limited and

highly deferential.' "    *U.S. v. Park Place Associates, Ltd*., 563 F.3d 907, 920 (9th

Cir. 2009) (*quoting PowerAgent Inc. v. Elec. Data Sys. Corp*., 358 F.3d 1187, 1193

(9th Cir. 2004).   As such, "arbitrators exceed their powers… not when they merely

interpret or apply the governing law incorrectly, but when the award is completely

irrational, or exhibits a manifest disregard of law."    *Kyocera Corp. v.*

*Prudential-Bache Trade Servs., Inc*., 341 F.3d 987, 997 (9th Cir. 2003) (internal

quotation marks and citations omitted).   The manifest disregard exception under the

Federal Arbitration Act requires "something beyond and different from a mere error

in the law or failure on the part of the arbitrators to understand and apply the law."

*Collins v. D.R. Horton, Inc*., 505 F.3d 874, 879 (9th Cir. 2007) (*quoting San Martine*

*Compania De Navegacion, S.A. v. Saguenay Terminals Ltd*., 293 F.2d 796, 801 (9th

Cir. 1961)).   A court may not reverse an arbitration award even in the face of an

erroneous interpretation of the law.   *Id*.   Rather, to demonstrate manifest disregard

of the law, the moving party must show that the arbitrators understood and correctly

stated the law, but proceeded to disregard the same.   *Id*.   This means that " '[i]t

---

Investors' conduct following the 2012 Final Award, and that enforcement of the award
would violate public policy, due to the Investors' alleged attempt to violate the automatic
bankruptcy stay and to obtain relief against Mr. Swenson for the actions of DBSI E-470.
These theories will be addressed, *infra*, in the portions of this decision regarding the
Investors' conduct following the 2012 Final Award and the bankruptcy stay.

**MEMORANDUM DECISION AND ORDER - 20**

must be clear from the record that the arbitrators recognized the applicable law and then ignored it. As such, mere allegations of error are insufficient.' " *Collins*, 505 F.3d at 879 (*quoting Carter v. Health Net of Cal., Inc*., 374 F.3d 830, 838 (9th Cir. 2004)).

Given the limited judicial review of an arbitration award permitted under the Federal Arbitration Act, the party seeking to overturn or vacate an arbitration award carries a heavy burden.   *Oxford Health Plans LLC v. Sutter*, 569 U.S. ___ (2013) ("limited judicial review 'maintain[s] an arbitration's essential virtue of resolving disputes straightway.'   If parties could take 'full-bore legal and evidentiary appeals,' arbitration would become 'merely a prelude to a more cumbersome and time-consuming judicial review process.") (*quoting Hall Street Associates LLC v. Mattel, Inc*., 552 U.S. 576, 588 (2008)); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995) (under the Federal Arbitration Act, courts may vacate an arbitrator's decision, "only in very unusual circumstances.").

**MEMORANDUM DECISION AND ORDER - 21**

## ANALYSIS

Mr. Swenson argues the 2012 Final Award should be vacated because the Arbitrator exceeded his authority upon remand and because the 2012 Final Award is ambiguous and indefinite.   In addition, Mr. Swenson suggests the 2011 Final Award and, indeed, the entire arbitration, should be vacated because the Investors' claims were against DBSI E-470, an indispensable party, and not against Mr. Swenson, and because the arbitration was an attempt to pursue claims against DBSI by seeking relief from parties not subject to the automatic bankruptcy stay.

### A. 2012 Final Award

1. *Briefing and analysis upon remand*

Mr. Swenson claims the Arbitrator exceeded his authority upon remand for a number of reasons.   As mentioned, this Court remanded to the Arbitrator for the limited purpose of clarifying whether the Investors were required to fulfill their share of delinquent property taxes in order to be entitled to potential prospective damages of $2.27 million if the Property is foreclosed due to the county tax lien. (Dkt. 78, pp. 28, 32.)   The Court did not, however, limit or otherwise specify the evidence or submissions the Arbitrator could consider when addressing this issue upon remand.   Mr. Swenson claims the Arbitrator exceeded the Court's limited remand order by requesting multiple rounds of briefing, issuing a detailed,

eight-page, single-spaced document which considered the case history and background facts, re-analyzing the breach of contract and fraud findings, and reviewing and analyzing the damages award.   (Dkt. 100-1, p. 10.)

On remand for clarification, an "arbitrator is limited in his review to the specific matter remanded for clarification and may not rehear or redetermine those matters not in question."   *Domino Group, Inc. v. Charlie Parker Memorial Foundation*, 985 F.2d 417, 420 (8th Cir. 1993) (internal quotations and citations omitted); *see also McClatchy Newspapers v. Central Valley Typographical Union No. 46*, 686 F.2d 731, 734 (9th Cir. 1982) ("[r]ecommitting an issue to an arbitrator for clarification and interpretation does not effectuate an appeal to the arbitrator, a new trial, or an opportunity to relitigate the issue.").   However, the Court finds the Arbitrator did not attempt to rehear or relitigate the issues upon remand because he requested argument and issued a detailed decision.   Although the Arbitrator requested briefing from the parties, this request sought briefing regarding the "ambiguity identified by the Court," and not arguments regarding any issue not specifically remanded.   (Dkt. 82-1, p. 2.)   In Scheduling Order No. 6 following this Court's Remand, the Arbitrator explained:

> The Court found ambiguity as to essentially who is responsible to pay real property taxes in Arapahoe County, and the impact of that issue on potential prospective damages.   I believe certain sub issues may

impact my decision on resolving the ambiguity.   These sub issues
include the following:

   A.  Does the Arbitrator have any authority to force or cause the entity, DBSI
       Real Estate Liquidating Trust, which currently owns 36.5% of the real
       property, to pay its share of the real property taxes?

   B.  What is the effect, if any, if one of the parties I determine is responsible to
       pay the real property taxes fails to pay their share of the real property
       taxes?

(Dkt. 98-4.)

The Arbitrator thus specifically limited his request for additional briefing and
argument to the parties' respective responsibility for the tax lien, the precise issue
the Court remanded to him for consideration.   In addition, the 2012 Final Award
illustrates that the Arbitrator did not re-litigate the case, and instead limited the 2012
Final Award to resolve the ambiguity identified by the Court.   For instance, the
2012 Final Award provides, "[n]either party requested an evidentiary hearing, oral
argument or the introduction of any new documentary evidence"; "[t]he [Court's]
Order] only specifies that the Arbitrator provide a clarification.   It does not require
a fully reasoned decision"; "[n]o party has requested that any new or additional
evidence be considered in resolving the ambiguity and no new evidence is required
to resolve the ambiguity."   (Dkt. 82-1, pp. 2-3.)   Further, although the 2012 Final
Award is lengthy and detailed, it simply recounts the history of the arbitration and
the 2011 Final Award in order to explain the prospective damages award with
respect to the tax lien, as this Court directed the Arbitrator to so clarify.   The

**MEMORANDUM DECISION AND ORDER - 24**

Arbitrator did not attempt to rehear the case and did not exceed his authority upon remand by requesting briefing or outlining the history of the case in the 2012 Final Award.

### 2. *Consideration of new evidence*

Mr. Swenson next contends that the Arbitrator exceeded his authority because the 2012 Final Award was based on new evidence submitted by the Investors.   (Dkt. 100-1, p. 10.)   The only new evidence Mr. Swenson identifies, however, is the Investors' contention that Arapahoe County does not accept partial payments of real estate taxes.   (*Id*.)   Mr. Swenson claims the Investors impermissibly presented such new evidence in their submissions to the Arbitrator following the Remand Order.   (*Id*.)   However, as the arbitration hearing transcript illustrates, the Investors suggested during the June 2011 arbitration hearing that Arapahoe County does not accept partial tax payments.   (Dkt. 66-4, p. 1238, testimony of Mr. Bushman, stating, "I know also that I can't pay part of the taxes and have my portion of the property released.   They all have to be paid at once.")   The evidence regarding whether Arapahoe County would accept partial payments was not "new" as Mr. Swenson claims.   Moreover, even if the evidence regarding Arapahoe County's acceptance or denial of partial tax payments was new, such evidence was

**MEMORANDUM DECISION AND ORDER - 25**

relevant to the issue submitted upon remand to the Arbitrator, i.e., whether the potential prospective damages award would be triggered if the Investors failed to pay their share of the taxes.   (Dkt. 78, p. 28.)   The Arbitrator did not exceed his authority by considering evidence relevant to the narrow issue remanded to him.[9]

### 3.   *Potential prospective damages due to Deed of Trust foreclosure*

Mr. Swenson's third argument is more substantial.   Mr. Swenson argues that the "2012 Final Award altered the language of the prospective damages award concerning foreclosure on the Deed of Trust, an issue that went well beyond the clarification mandate set by the Court."   (Dkt. 100-1, p. 10.)   Specifically, the 2011 Final Award allowed prospective damages due to foreclosure of the Deed of Trust *only* if the Arbitrator's conclusion that the partial release was valid later turned out to be incorrect.   (Dkt. 52-2, p. 4.)   However, the 2012 Final Award seemingly omits this contingency regarding the partial release, and instead provides the Investors are entitled to recover potential prospective damages if the Deed of Trust is foreclosed and the Investors lose their interests in the real property.   (Dkt. 82-1, p. 7, "[I]f Claimants' interests in the real property… are lost due to foreclosure of the Deed of

_____

9  Mr. Swenson also implies that the Arbitrator requested evidence "independent of the issue identified by this Court for remand, such as the current status of the Property and the real property tax lien certificates held by Arapahoe County."   (Dkt. 100-1, p. 7.) However, as the Investors suggest, the status of the Property and the status of the tax lien certificates at the time of the remand were relevant because any decision the Arbitrator made, and any review by this Court, would have been moot if the Property had already been tax forfeited.   (Dkt. 105, p. 3.)

**MEMORANDUM DECISION AND ORDER - 26**

Trust, exhibit 94, their actual damages due from Douglas Swenson are $2,271,039.30.")

As an initial matter, the Court notes that the 2011 Final Award and the 2012 Final Award regarding potential prospective damages due to a Deed of Trust foreclosure can be reconciled because, as the Arbitrator held in the 2011 Final Award, the Investors would not lose their interests in the Property if the partial release is valid and the Property is foreclosed under the Deed of Trust.   Thus, the language of the 2012 Final Award does not necessarily contradict the Arbitrator's previous finding that the Investors would not be entitled to prospective damages if the partial release is valid and the Deed of Trust is foreclosed.   (*Compare* Dkt. 82-1, p. 2 *with* Dkt. 52-2, p. 4.)   The Arbitrator's elimination of the contingency regarding the partial release thus appears inadvertent, as the 2012 Final Award could be read to allow prospective damages for a Deed of Trust foreclosure only if the Investors lose their interests due to the foreclosure, which would first require a finding by the Bankruptcy Court that the partial release is invalid.

However, that the Arbitrator's 2012 Final Award regarding this issue created an ambiguity is evidenced by the Investors' conduct following issuance of the 2012 Final Award.   Five days after the 2012 Final Award was issued, the Investors consented to a Deed of Trust foreclosure of the Property.   The following day,

**MEMORANDUM DECISION AND ORDER - 27**

August 3, 2012, the Arapahoe County Court entered its Judgment and Decree of

Foreclosure.   Foreclosure of the Property was scheduled to occur on December 20,

2012.   As previously noted, the Arapahoe County Court ultimately vacated the

foreclosure, finding both that the partial release was presumptively valid and that the

Bankruptcy Court had not ruled that the partial release was void or voidable.

Moreover, the Arapahoe County Court noted that the Investors had failed to advise

the Court of the Arbitrator's finding that the partial release was valid.

Although the Investors may believe the partial release is invalid, it is hard to

imagine that they would not advise the Arapahoe County Court of the Arbitrator's

finding that the partial release was valid had the 2012 Final Award not seemingly

eliminated this contingency to their right to collect prospective damages.   That is,

the Investors would have at least filed an objection to the foreclosure of their

Property if they believed their entitlement to $2.27 million in prospective damages

was contingent on a yet-to-be issued finding by the Bankruptcy Court that the partial

release is invalid.   However, because the Investors apparently believed that the

2012 Final Award eliminated this contingency on their right to collect prospective

damages, they did nothing to stop the foreclosure and, indeed, failed to advise the

Arapahoe County Court of the Arbitrator's finding that the partial release was valid.[10]

The ambiguity created by the 2012 Final Award is also evidenced by the Investors' brief in opposition to Mr. Swenson's Second Motion to Vacate. Specifically, the Investors misleadingly state, "the Arbitrator did not make any changes to his [2011 Final Award] ruling that prospective damages would be awarded if the Lien was foreclosed….   The Arbitrator's ruling has never depended on any future 'finding' or further litigation regarding the validity of the Lien's partial release."[11]  (Dkt. 105, p. 4.)   The Investors selectively cite to the Arbitrator's 2011

---

10 Mr. Swenson suggests that, in light of the Investors' representation to the Arbitrator that they had mitigated damages, their failure to contest the foreclosure or to advise the Arapahoe County Court of the Arbitrator's finding that the partial release was valid was so egregious as to warrant vacating both the 2011 Final Award and the 2012 Final Award on the basis of "undue means" or "mistake of fact."   (Dkt. 100-1, p. 13, n. 6.)   Although the Court agrees that the Investors' conduct was questionable, an arbitration award cannot be vacated under the "undue means" criteria of 9 U.S.C. §10(a)(1) unless the party claiming undue means can show a causal connection between the alleged undue means and the award.   *PaineWebber Group, Inc. v. Zinsmeyer Trusts Partnership*, 187 F.3d 988, 994 (8th Cir. 1999) ("an arbitration award may be vacated if it was 'procured by' undue means. In other words, there must be some causal relationship between the undue means and the arbitration award.").   Here the conduct at issue occurred after the Arbitrator issued both the 2011 Final Award and the 2012 Final Award.   There was no connection between the Investors' actions and either of the Final Awards, where such actions took place after the arbitration awards were issued.   Further, even if the Arbitrator's awards were partially based on the Investors' representation that they had mitigated their damages, this cannot be considered a "mistake of fact" warranting vacating the awards because the Investors' purported failure to mitigate, again, occurred after the Arbitrator had issued his awards.

11  Throughout their brief in opposition to Mr. Swenson's Motion to Vacate, Investors' counsel mischaracterize the Arbitrator's findings and attempt to justify the Investors'

**MEMORANDUM DECISION AND ORDER - 29**

Final Award and September 14, 2011 Interim Award in support of this argument, but

fail to acknowledge the Arbitrator's explicit instruction in the 2011 Final Award that

any prospective damages due to a Deed of Trust foreclosure are contingent on a

finding that the partial release is invalid:

> **[The Investors] are not entitled to the purchase price of $2,729,186.13[12] less the amount of the Deed of Trust placed on the property before they purchased the property, exhibit 94, because that Deed of Trust has been partially released.**   See exhibit 103. According to the opinion of [Mr. Swenson's] expert witness, James Benjamin, if the holder of the Deed of Trust forecloses, it would only be able to foreclose upon tenancy in common interests of the other tenant in common, DBSI Liquidating Trust, not the [Investors]…. **Consequently, the value of [the Investors'] interest in the real property is not diminished by the Deed of Trust, exhibit 94**….   The [Investors] are, however, entitled to be protected against prospective losses, as against Respondent Doug Swenson….   Here, if [Mr. Swenson's] expert witness' opinion on the effect of the partial release of the Deed of Trust and the ultimate foreclosure of the Deed of Trust, exhibit 94, is mistaken, [the Investors'] damages will exceed the actual damages awarded so far in the proceeding paragraphs.   If [the Investors'] interests are lost due to foreclosure of the Deed of Trust, exhibit 94, their actual damages will be the price they paid for their interests, $2,729,186.13.   Likewise, if Arapahoe County forecloses on the entire property because of its tax lien, [the Investors'] actual damages will be $2,729,186.13.   If the [Investors'] interest in the property is foreclosed as a result of the Deed of Trust or Arapahoe

---

conduct in apparently consenting to foreclosure of their Property in order to increase their damages.   Although the Court also rejects the Investors' request for post-award, pre-judgment interest on other grounds, such an award would clearly be improper in light of the Investors' and their counsels' actions before both this and the Arapahoe County Court.

12  In order to avoid double recovery, the Arbitrator later reduced this figure by the $458,146.81 in actual damages he had already awarded the Investors.   (Dkt. 52-3, p. 3.)

County tax lien, [Investors] shall be entitled to prospective actual damages from Mr. Swenson in the amount of $2,729,186.13.   **If Mr. Benjamin's opinion is correct, and if DBSI Liquidating Trust pays its share (36.5%) of tax lien, [Investors] will not suffer any recoverable prospective damages and Mr. Swenson will not be liable to [the Investors] for these prospective damages**.

(Dkt. 52-2, pp. 4-5) (emphasis added).

Clearly, the 2011 Final Award limited the Investors' right to collect prospective damages in the event of a Deed of Trust foreclosure to the ultimate validity of the partial release.   If Mr. Swenson's expert witness was correct, and the partial release was valid, the Investors were not entitled to collect prospective damages due to a Deed of Trust foreclosure.   The 2012 Final Award seemingly eliminates this contingency by stating, "[i]f the [Investors'] interest in the real property… are lost due to foreclosure of the Deed of Trust, exhibit 94, their actual damages due from Douglas Swenson are $2,271,039.30."   (Dkt. 82-1, p. 2.)   The 2012 Final Award does not mention the Arbitrator's previous finding that the Investors will not be entitled to prospective damages in the event of a Deed of Trust foreclosure *unless* the partial release is deemed invalid.

As this Court previously held in remanding this matter to the Arbitrator, ambiguous awards cannot be enforced and should be remanded.   (Dkt. 78, p. 28-29.)   However, this Court has already confirmed the Arbitrator's finding that the Investors are entitled to prospective damages for a Deed of Trust foreclosure only in

the event the partial release is deemed invalid.[13]   (Dkt. 78.)    Where, as here, an

award is remanded to an arbitrator for clarification and interpretation, the arbitrator

"can only review the specific matter remanded for clarification, and… cannot rehear

or redetermine matters not in question."   2 *Domke on Commercial Arbitration* §

40.5.   The common law doctrine of *functus officio* "forbids an arbitrator to

redetermine an issue which he has already decided."   *Bosack v. Soward*, 586 F.3d

1096, 1103 (9th Cir. 2009 ) (*citing McClatchy Newspapers v. Central Valley

Typographical Union No. 46*, 686 F.2d 731, 734, n.1 (9th Cir. 1982)).

        There are exceptions to the doctrine of *functus officio*.   For instance, an

arbitrator can correct a mistake which is apparent on the face of the award.   *Sterling

China Co. v. Glass, Molders, Pottery, Plastics & Allied Workers Local No. 24*, 357

F.3d 546, 554 (6th Cir. 2004*); La Vale Plaza, Inc. v. R.S. Noonan, Inc*., 378 F.2d

569, 572 (3d Cir.1967).   Thus, the Arbitrator was within his authority when he

corrected a computational error in the December 2011 Final Award which would

---

13 *See, e.g*., Dkt. 78, p. 25, noting the Arbitrator did not provide for prospective damages
if Mr. Swenson's expert was correct and the Investors would not lose their interest in the
real property in the event of a Deed of Trust foreclosure; p. 32, "[a]ll portions of the award
are confirmed, with the exception of one isolated portion of the potential prospective
damages award.   As discussed above, it is unclear whether the arbitrator intended
potential prospective damages to be triggered if the tax lien is foreclosed based on the
investors' failure to pay their share of the tax lien.   This discrete potion of the award is
ambiguous and is vacated and remanded to the arbitrator for clarification.   *The award is
confirmed in all other respects*."   (emphasis added).

have provided the Investors with double recovery.   *See, supra*, *text accompanying notes* 1 and 12.   A second exception to the *functus officio* doctrine arises where an award seems complete but proves ambiguous in its scope and implementation. *Brown v. Witco. Corp.*, 340 F.3d 209, 219 (5th Cir. 2003).   The Arbitrator consequently had authority to clarify the tax-lien issue when this Court found the prospective damages award was ambiguous with respect to the parties' respective responsibility for the tax lien and remanded to the Arbitrator for clarification.[14]

Finally, in order for *functus officio* to apply, an arbitration award must be final, and the arbitrator must have intended the award to be final.   *Bosack*, 586 F.3d at 1103.   Here there is no question that the Arbitrator intended the 2011 Final Award to be final.   Although he subsequently modified a computational error, the Arbitrator conclusively determined the liability of the parties in the 2011 Final Award.   And, although this Court determined the 2011 Final Award was ambiguous with respect to the tax lien issue, the Court also found the rest of the 2011 Final Award unambiguous and without error and, indeed, confirmed the Arbitrator's ruling with respect to all issues not involving the tax-lien contingency, including the Investors' right to prospective damages (if the partial release is invalid) in the event

---

14 A third exception to the doctrine is where an arbitration award does not adjudicate an issue which has been submitted.   Then, as to the issue not submitted, the arbitrator has not exhausted his function and the issue remains open to him for subsequent determination. *Id*.

**MEMORANDUM DECISION AND ORDER - 33**

of a Deed of Trust foreclosure.   Thus, to the extent the 2012 Final Award eliminates the contingency that the partial release must be deemed invalid before the Investors have a right to prospective damages of $2.27 million in the event of a Deed of Trust foreclosure, this material change to the 2011 Final Award is void under the *functus officio* doctrine.   *U.S. Life Ins. Co. v. Superior Nat. Ins. Co*., 591 F.3d 1167, 1178 (9th Cir. 2010); *Brown   v. Witco Corp.*, 340 F.3d 209, 221 (5th Cir. 2003).

In *Brown v. Witco. Corp.*, an employee brought a state court action to enforce an arbitration award of back-pay.   In the original arbitration award, the arbitrator determined the employee's back-pay should be reduced due to the employee's failure to mitigate damages by failing to seek alternative employment.   Following removal to federal court by the employer, the magistrate judge confirmed the majority of the arbitrator's award as "clear and unambiguous," but remanded to the arbitrator for clarification of the back-pay calculation.   The arbitrator issued a clarification that eliminated the original award's failure-to-mitigate factor.   Upon motion by the employer, the district court vacated portions of the remand order which contradicted the original award, and reinstated the terms of the original award.   The Fifth Circuit affirmed.

In so holding, the Fifth Circuit noted that, although the arbitrator had authority to clarify the original award, the arbitrator could not exceed the scope of the district

**MEMORANDUM DECISION AND ORDER - 34**

court's remand order and alter the previously confirmed terms of the original award by eliminating the failure-to-mitigate factor.    The Fifth Circuit significantly explained:

> [T]he immediate issue before us is whether the arbitrator has the authority to disregard the express terms of a federal court's remand order and effectively reverse determinations that the court has already confirmed to be unambiguous and binding on the parties.    Clearly, he does not.    Once a court of competent jurisdiction has confirmed that an arbitration award is unambiguous and binding on the parties, the arbitrator becomes *functus officio* with respect to that portion of the arbitration award and lacks authority to reconsider those aspects of his decision that are unambiguous and binding.    Thus, on remand, the arbitrator is limited in his review to the specific matter or matters remanded for his clarification and he may not rehear or redetermine matters outside the scope of the remand order.    It follows, therefore, that if the arbitrator exceeds the scope of a limited remand order, then the court may vacate those portions of the arbitrator's decision on remand that go behind his limited authority to clarify, complete, or correct the award that he has already made.    Accordingly, the district court was correct when it vacated those parts of the arbitrator's… decision on remand and enforced the remainder of the award.

*Id*. at 221 (internal citations omitted).

Like the award at issue in *Brown*, here the arbitration award was confirmed in all respects except for the issue concerning prospective damages relating to tax liens. This Court's remand order directed the Arbitrator to clarify the parties' respective responsibility for the taxes on the Property, but did not submit any other issues to the Arbitrator, including the other contingent portion of the prospective damages award. Thus, to the extent the 2012 Final Award eliminated the contingency in the 2011

**MEMORANDUM DECISION AND ORDER - 35**

Final Award that prospective damages would only be due for a Deed of Trust foreclosure if the partial release is deemed invalid, this portion of the 2012 Final Award exceeded the Arbitrator's authority upon remand.   Rather than remanding to the Arbitrator for further clarification, here the appropriate remedy is to vacate the 2012 Final Award to the extent it eliminates the contingency, already confirmed by this Court, that prospective damages are due for a Deed of Trust foreclosure only if the partial release is ultimately deemed invalid.   If an arbitration award is "partially valid and partially invalid, it can be severed if a severable interpretation is possible." 2 *Domke on Commercial Arbitration*, § 40:4.   The Court accordingly vacates the portion of 2012 Final Award which went beyond the Arbitrator's authority by seemingly eliminating the 2011 Final Award's contingency regarding the partial release.

       4.   *Tax lien issue*

Finally, Mr. Swenson also suggests the 2012 Final Award should be vacated because the award is ambiguous with respect to the tax-lien issue.   Specifically, Mr. Swenson claims "it is not clear from the 2012 Final Award what, if any, contingencies must exist before prospective damages are recoverable for unpaid taxes." (Dkt. 100-1, p. 14.)   Upon remand, the Arbitrator requested briefing from the parties regarding the tax-lien issue.   (Dkt. 82-1, p. 2.)   In his briefing, Mr.

**MEMORANDUM DECISION AND ORDER - 36**

Swenson argued that the Investors and DBSI Liquidating Trust were responsible for all real estate taxes for the property under the Private Placement Memorandum incorporated into the Purchase Agreement for the Property.  (*Id.*, p. 4.)   Mr. Swenson maintained that he should not be liable for prospective damages if the DBSI Liquidating Trust or the Investors failed to pay their share of the real estate taxes.   Mr. Swenson also argued that he should not be liable for potential prospective damages if the Investors collected the tax pay-off amount (previously awarded by the Arbitrator) from Mr. Swenson and failed to apply this amount to the Arapahoe County real estate taxes or to purchase tax-lien certificates.  (*Id.*)   The Investors maintained that they did not have sufficient assets to pay the outstanding property taxes.   They also suggested that Arapahoe County does not accept partial payment, and that they thus could not simply pay the taxes owed on their 63.5% share of the Property in order to avoid foreclosure due to the tax lien.  (*Id.*)

The Arbitrator determined the Investors were not required to pay taxes under the Purchase Agreement, as Mr. Swenson claimed, because Mr. Swenson breached that agreement.   As such, the contract no longer existed and the Investors had no further obligations thereunder.  (*Id.*, p. 5, *citing Restatement of the Law Second Contracts*, Vol. 2 §§ 178-315, *Introduction Note* at 194, and §241.)   The Arbitrator also determined that if DBSI Liquidating Trust paid its (approximately 36.5%) share

of the taxes to the Investors, Mr. Swenson would not be liable for this amount, but, if DBSI Liquidating Trust did not pay its share of the taxes, Mr. Swenson would be liable to the Investors' for DBSI Liquidating Trust's 36.5% share of the taxes. In so holding, the Arbitrator noted that, prior to their investment in the Property, Mr. Swenson had fraudulently represented to the Investors that a land manager would place a portion of the Investors' money into escrow for accountable reserves for payment of fees, including real estate taxes.   (*Id.*, p. 6.)   Although promised, this did not happen.   (*Id.*)   Mr. Swenson also represented that the Investors would receive option payments equivalent to 7% of equity for 2 to 3.5 years.   (*Id.*)   Once again, although promised, the Investors did not receive option payments.   (*Id.*) The Arbitrator determined that had the Investors received option payments, as promised, the cash flow from such payments could have been used to pay real estate taxes.   (*Id.*)   The Arbitrator also noted that, due to Mr. Swenson's fraud, the real estate taxes were not paid on the Property.   In the event that DBSI Liquidating Trust failed to pay its share of the real estate taxes, the Arbitrator determined the Investors would not have an adequate remedy at law to avoid losing their entire $2.27 million investment in the Property.   As such, the Arbitrator determined that, because Mr. Swenson created the tax lien issue, he was responsible to the Investors to remedy the problem.   (*Id.*)

**MEMORANDUM DECISION AND ORDER - 38**

The Arbitrator thus held: (1) if the Investors lose their interest in the Property because Arapahoe County sells tax certificates for the Property, the Investors will be entitled to prospective damages of $2.27 million[15]; (2) If DBSI Liquidating Trust pays its share of the Arapahoe County real estate taxes plus interest, if any, Mr. Swenson shall not be liable to the Investors for these taxes and interest; and (3) If DBSI Liquidating Trust does not pay its share of the taxes and interest, Mr. Swenson shall be liable to the Investors for the amount of its taxes and any interest.   (Dkt. 82-1, p. 2.)   However, the Arbitrator also clarified that Mr. Swenson would not be liable for the $2.27 million in prospective damages if he paid the Investors actual damages and the Investors did not use this sum to attempt to pay the Arapahoe County tax lien or to purchase the Arapahoe County tax-lien certificates.   (*Id.*, pp. 7-8.)

The Arbitrator's 2012 Final Award thus remedied the ambiguity highlighted in this Court's Remand Order.    Specifically, the Arbitrator determined the Investors were not required to pay their share of the tax lien *unless* the Investors received the tax pay-off amount from Mr. Swenson.   If Mr. Swenson paid the Investors actual damages, and the Investors then failed to use this sum to pay their

---

15 The prospective damages award was for approximately $2.27 million, and not for the entire $2.7 million investment the Investors made in the Property, because the Arbitrator already awarded the Investors $458,146.81 in actual damages.   The Arbitrator thus reduced the $2.7 million prospective damages award by $458,146.81 in actual damages to arrive at the $2.27 million figure.   (Dkt. 52-3.)

share of the tax lien, then Mr. Swenson would not be liable for $2.27 million in

prospective damages if the Property is foreclosed due to the tax lien.   However, if

the Investors did not receive actual damages from Mr. Swenson, the Investors would

not be required to pay their share of the tax lien, and Mr. Swenson would be liable

for $2.27 million in prospective damages if the Property is tax forfeited.   Further, if

DBSI Liquidating Trust does not pay its share of the tax lien, Mr. Swenson would be

liable to the Investors for the amount of its taxes and interest.[16]

Mr. Swenson challenges this portion of the 2012 Final Award because this

Court stated in the remand Order that, as the Court understood prospective damages

in the 2011 Final Award, prospective damages would not be triggered if the

Investors failed to pay their share of the tax lien.   (Dkt. 100-1, pp. 7-8, *citing* Dkt.

78, p. 28.)   The 2012 Final Award instead provides that the Investors are not

obligated to Mr. Swenson to pay their share of the real estate taxes. (Dkt. 82-1, p. 7.)

---

16 Mr. Swenson suggests this portion of the 2012 Final Award is ambiguous and
inconsistent with the 2011 Final Award because it makes Mr. Swenson "seemingly liable
**to the Investors** for the amount of the **Trustee's** unpaid taxes."   (Dkt. 100-1, p. 8.)
(emphasis in original). However, the 2011 Final Award itself stated, "[i]f DBSI Real Estate
Liquidating Trust pays its share of the Arapahoe County real estate taxes plus interest, if
any, Mr. Swenson shall not be liable to [the Investors] for these taxes and interest.   **If
DBSI Real Estate Liquidating Trust does not pay its share of these taxes and interest,
Mr. Swenson shall be liable to [the Investors] for the amount of these taxes plus any
interest thereon**."   (Dkt. 52-2, p. 5.) (emphasis added).   The 2012 Final Award did not
change the 2011 Final Award with respect to this issue, nor create any inconsistency or
ambiguity.   Under both awards, Mr. Swenson is liable for DBSI's share of the tax lien if
DBSI fails to pay its share of the lien.

However, this Court did not tell the Arbitrator how to rule with respect to the tax issue, nor did it direct the Arbitrator to determine that prospective damages would not be triggered if the Investors failed to pay their share of the tax lien. Further, as the Arbitrator notes in the 2012 Final Award, "[p]roviding that [the Investors] are not obligated to Mr. Swenson to pay the real estate taxes levied by Arapahoe County is not a change to the [2011 Final Award] or an increase in the actual damages awarded against Mr. Swenson in favor of [the Investors].   It is only a clarification that as between Mr. Swenson and [the Investors], the [Investors] are not obligated to pay Arapahoe County real estate taxes."   (*Id*.)   The Arbitrator thus followed the Court's remand order with respect to the tax issue, and clarified that the Investors are not obligated to pay the Property taxes unless they first receive the tax pay-off amount, or any portion thereof, from Mr. Swenson.   (*Id*.)

Pursuant to the Arbitrator's 2012 Final Award, the Investors cannot trigger prospective damages by refusing to pay the tax lien and allowing foreclosure of the Property if they receive the tax pay-off amount from Mr. Swenson, and do not then use this sum to pay the tax lien.   However, if Mr. Swenson fails to pay the Investors actual damages and the Investors lose their interest in the Property due to the tax lien, then Mr. Swenson will be liable for the $2.27 million in prospective damages. (Dkt. 82-1, p. 2.)   If the Investors do not receive the tax pay-off amount from Mr.

**MEMORANDUM DECISION AND ORDER - 41**

Swenson, they are not obligated to pay the Arapahoe County real estate taxes in order to collect $2.27 million in prospective damages if the Property is tax forfeited. (*Id.*, pp. 7-8.)

Mr. Swenson also claims "the 2012 Final Award is ambiguous as to damages stemming from taxes because one of the awards is triggered by Investors merely 'offer[ing] the payment' of taxes" and it "is unclear what an 'offer' consists of (e.g., whether an intentionally insufficient offer satisfies this contingency)."   (Dkt. 100-1, p. 14.)   However, under the 2012 Final Award, the Investors' duty to "offer the payment of taxes" is contingent on Mr. Swenson's payment of such taxes to the Investors.   If the Investors:

> [C]ollect $443,479.71 from Mr. Swenson, they shall use this amount or any portion thereof, to offer the payment of any Arapahoe County real estate taxes levied against the property or the purchase of any Arapahoe County tax-lien certificates.   If [the Investors] fail to offer to pay **any collected amounts** as set forth in the proceeding sentence, [the Investors] shall not be entitled to prospective damages from Mr. Swenson as a result of losing their interests in the property for failure to pay real estate taxes or purchase the tax lien certificates.

(Dkt. 82-1, p. 8.) (emphasis added).

It is unclear how the Investors could make an "intentionally insufficient offer" to pay the Arapahoe County taxes where the 2012 Final Award specifically provides that the Investors must pay any of the collected tax pay-off amount to Arapahoe County.   Moreover, as the Arbitrator essentially determined Mr. Swenson is liable

**MEMORANDUM DECISION AND ORDER - 42**

for the entire delinquent tax amount (if DBSI Liquidating Trust does not pay its

share of the taxes), Mr. Swenson can avoid the prospective damages award (with

respect to a tax-lien foreclosure), as well as any possibility of the Investors making

an "intentionally insufficient offer" to pay the taxes, by paying the delinquent taxes

on the Property himself instead of giving the Investors the tax pay-off amount.   As

the Arbitrator notes in the 2012 Final Award, "Mr. Swenson can avoid potential

prospective damages as long as the real estate taxes assessed against the property are

paid or he purchases the tax deed certificate and assigns it to [the Investors]."   (*Id*.,

p. 2)

        The 2012 Final Award thus identifies the "contingencies which exist before

prospective damages are recoverable for unpaid taxes."   (Dkt. 100-1, p. 14.)   To be

entitled to prospective damages if the Property is foreclosed for unpaid taxes, the

Investors must first receive the tax pay-off amount from Mr. Swenson, and must

then use such damages to satisfy the tax lien.   If the Investors do not receive this

amount and the Property is tax forfeited, the Investors will be entitled to prospective

damages.   If the Investors receive this amount and do not use it to pay off the lien,

they will not be entitled to prospective damages if the Property is tax forfeited.   Mr.

Swenson does not identify, and the Court does not perceive, any other contingencies,

whether ambiguous or straightforward, which must occur before the Investors are

**MEMORANDUM DECISION AND ORDER - 43**

entitled to prospective damages if the Property is foreclosed due to unpaid taxes. Because the Court finds the 2012 Final Award unambiguously clarified the tax lien issue, all portions of the 2012 Final Award are confirmed with respect to Mr. Swenson's liability for unpaid taxes.

### B.   Alleged Grounds for Vacating both Final Awards

In addition to attempting to vacate the 2012 Final Award for the reasons highlighted above, Mr. Swenson also seeks to vacate both the 2012 Final Award and the 2011 Final Award due to two purportedly "unwaivable errors."   (Dkt. 100-1, p. 14.)   Specifically, Mr. Swenson claims the Arbitrator exceeded his authority by determining Mr. Swenson's liability through claims against DBSI, an absent but indispensable party, and in violation of the automatic bankruptcy stay.   As an initial matter, the Court notes that Mr. Swenson failed to raise either of these theories in his First Motion to Vacate.   Although absence of an indispensable party and violation of an automatic bankruptcy stay are not subject to waiver,[17] Mr. Swenson does not offer any justification for his failure to raise such theories in his First Motion to Vacate.   Nor does Mr. Swenson provide any authority to support his second attempt to vacate the 2011 Final Award based on new theories not raised in his First Motion

---

17  *See, e.g., McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960) ("The absence of indispensable parties can be raised at any time, however, even by the appellate court on its own motion."); *Maritime Elec. Co. Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1992) ("Because the automatic stay serves the interests of both debtor and creditors, it may not be waived and its scope may not be limited by a debtor.").

**MEMORANDUM DECISION AND ORDER - 44**

to Vacate.   As such, it is not clear that this Court has authority to revisit previously

unchallenged aspects of the 2011 Final Award.   To the extent the Court is permitted

to engage in such an exercise, it rejects both theories and declines to vacate the 2011

Final Award.

   1.   *DBSI as an Indispensable Party*

Mr. Swenson argues the Arbitrator improperly held Mr. Swenson liable,

under a piercing the corporate veil theory, for claims against DBSI.   (*Id.*, p. 15,

"[t]he Investors' causes of action that the Arbitrator awarded damages on are claims

against DBSI entities: DBSI E-470 was a defendant in the Investors' original suit

underlying this action.")   Because the Purchase Agreement was between DBSI

E-470 and the Investors, one of the central issues in the arbitration was whether the

Investors could establish a basis to pierce the corporate veil and find the Swensons

personally liable for the contractual obligations and conduct of DBSI E-470.   (Dkt.

50, pp. 13-14.)   The Arbitrator determined the corporate veil should be pierced, and

held all three Swensons liable for DBSI E-470's contractual breaches by piercing the

corporate veil.

In support of his Second Motion to Vacate, Mr. Swenson claims that by

piercing DBSI's corporate veil, "the Arbitrator made DBSI a necessary and

indispensable party."   (Dkt. 111, p. 7.)   To the extent Mr. Swenson seeks to revisit

the Arbitrator's decision to pierce the corporate veil to hold all three Swensons liable for breach of the Purchase Agreement, this Court declines to do so.   Mr. Swenson already challenged the Arbitrator's decision to pierce the corporate veil on numerous grounds in his First Motion to Vacate.   (Dkt.   50, pp. 13-16.)   This Court thoroughly considered such arguments, and determined the Arbitrator did not "manifestly disregarded" the law, the appropriate standard under 9 U.S.C. § 10(a), when he pierced the corporate veil to hold all three Swensons liable for breach of contract.   (Dkt. 78, pp. 11-15.)   Mr. Swenson's "indispensable party" argument appears primarily an attempt to reargue that the Arbitrator manifestly disregarded the law when he pierced the corporate veil.   This Court has already rejected this argument, and, indeed, has already confirmed the Arbitrator's decision to hold all three Swenson's liable for breach of contract under a veil piercing theory.   The Court will not here reevaluate the merits of the Arbitrator's decision to pierce the corporate veil.

The Court also rejects Mr. Swenson's "indispensable party" argument to the extent it is independent from his challenge to the Arbitrator's decision to pierce the corporate veil because the Court finds Mr. Swenson is judicially estopped from arguing the arbitration should be vacated for failure to join an indispensable party.[18]

─────────────

18 Mr. Swenson cites an unpublished Northern District of Ohio case for the proposition that indispensable party arguments are not subject to judicial estoppel.   (Dkt. 111, p. 9,

MEMORANDUM DECISION AND ORDER - 46

Judicial estoppel is an equitable doctrine "that prevents parties from abusing the legal system by taking a position in one legal proceeding that is inconsistent with a position taken in an earlier proceeding." *Data Mountain Solutions, Inc. v. Giordano*, 680 F.Supp.2d 110, 125 (D.D.C. 2010) (*citing New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)); *Elemary v. Holzmann A.G.*, 533 F.Supp.2d 116, 125 n. 6 (D.D.C. 2008).   The doctrine of judicial estoppel "protect[s] the integrity of the judicial process… by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. at 749-50 (citations omitted).   Federal law governs the application of judicial estoppel in federal courts. *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 992 (9th Cir. 2012).

As the Supreme Court has explained, " '[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any

---

*citing Superior Beverage Group, Ltd. v. The Wine Group, Inc*., 2010 WL 3664906 (N.D. Ohio 2010)).   However, *Superior Beverage* involved a declaratory judgment action which, under Ohio's Declaratory Judgment Act, required that all persons who had any claim or interest that would be affected by the declaration be made a party to the action or proceeding.   The Ohio Court's determination that judicial estoppel could not apply given Ohio's statutory requirements is thus inapposite.   Further, judicial estoppel is an equitable principal to be applied at the Court's discretion under the circumstances of a particular case. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) ("Because the rule is intended to prevent improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by a court at its discretion.") (internal quotations and citations omitted).   Mr. Swenson's citation to non-binding and distinguishable authority does not alter the Court's determination that judicial estoppel is appropriate given the facts of this case.

**MEMORANDUM DECISION AND ORDER - 47**

general formulation of principle.'"   *New Hampshire*, 532 U.S. at 750 (*quoting Allen*

*v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir. 1982)).   Generally, however,

courts observe three factors when determining whether to apply the principal of

judicial estoppel in a particular case:

> First, a party's later position must be 'clearly inconsistent' with its
> earlier position….   Second, courts regularly inquire whether the party
> has succeeded in persuading a court to accept that party's earlier
> position, so that judicial acceptance of an inconsistent position in a later
> proceeding would create the perception that either the first or the
> second court was misled.…   A third consideration is whether the party
> seeking to assert an inconsistent position would derive an unfair
> advantage or impose an unfair detriment on the opposing party if not
> estopped.

*Id.* (internal quotations and citations omitted.)

Such factors are not "inflexible prerequisites or an exhaustive formula for

determining the applicability of judicial estoppel."   *Id.* at 751.   Rather, they serve

as guidelines and "[a]dditional considerations may inform the doctrine's application

in specific factual contexts."   *Id.*

When the Investors first brought suit against DBSI-E470 and the Swensons in

Colorado District Court, the Swensons moved, in their individual capacities, for

dismissal of the Investors' complaint, or for an indefinite stay of the litigation, on the

ground that the Purchase Agreement required that "any dispute, controversy, or

other claim arising under, out of or relating to this Agreement or any of the

**MEMORANDUM DECISION AND ORDER - 48**

transactions contemplated hereby… shall be determined and settled by binding arbitration in Boise, Idaho in accordance with Idaho law."   (Dkt. 1-3, p. 4.)   After the Colorado court determined the Investors' claims were arbitrable, but that it did not have jurisdiction to compel arbitration in Idaho, the Swensons sought to compel arbitration, again in their individual capacities, in this Court.   (Dkt. 1, p. 5, *stating*, "[p]etitioners move for an Order to Compel Arbitration of the claims asserted in *Bushman v. DBSI E-470 East*, in accordance with the terms of the Agreement, and for such other and further relief as may be just and proper." ).

Once this Court granted the Swensons' Petition to Compel Arbitration, the Swensons then represented to the Arbitrator that all issues and claims in the arbitration were arbitrable.   (Dkt. 106-4, p. 2, *stating*, "as the [Colorado District Court judge] correctly noted when she found the [Investors'] claims were arbitrable, 'all of the claims in the Complaint 'relate to' transactions contemplated in the Purchase Agreement.'").   In suggesting that all of the Investors' claims were arbitrable before the Arbitrator, Mr. Swenson invoked his right to arbitrate under the express terms of § 7.18.1 of the Purchase Agreement, and stated that *all* of the Investors' claims should be "determined and settled by binding arbitration in Boise, Idaho, in accordance with Idaho law[.]"   (Dkt. 106-4, p. 2.)   When addressing

whether Mr. Swenson should be held liable to the Investors under a corporate-veil

theory, the Arbitrator significantly noted in his Interim Award:

> The agreement to arbitrate is embedded in the Purchase Agreement….
> That Agreement provides in the first paragraph that it is between [DBSI
> E-470] and the various purchasers.   Yet in the United States District
> Court for the District of Idaho, 10-175-S-EJL, [the Swensons], not
> [DBSI E-470] sought to compel arbitration in their individual
> capacities….   As this example demonstrates, [the Swensons] use the
> Corporate Veil when it satisfies their purposes.   Based upon [the
> Swensons'] actions, it is reasonable for the Arbitrator to infer that [the
> Swensons] did not want to proceed to a jury trial and therefore
> attempted to avoid the corporate shield provided in the Purchase
> Agreement.   They cannot have it both ways: they cannot use the
> corporate shield when it suits their needs and disregard it when it is to
> their personal advantage.

(Dkt. 52-1, p. 11.)

Mr. Swenson has represented in three separate tribunals, before the Colorado

District Court, this Court, and the Arbitrator, that all matters in the Investors'

complaint were arbitrable.   He also represented that all of the Investors' claims

arose out of the Purchase Agreement, and, more importantly sought the right to

arbitrate provided for in the Purchase Agreement, even though he was not a party to

that agreement.   Mr. Swenson got what he asked for: a stay of the case and the

arbitration of all claims against him.   By now arguing, in the wake of an

unfavorable result from the arbitration, that the arbitration should be vacated for

failure to join an indispensable party, Mr. Swenson is reversing his prior position.

If this Court were to permit Mr. Swenson to adopt such inconsistent positions, Mr. Swenson would receive an undeserved advantage while inflicting an unfair burden on the Investors.   The Investors did not wish to have their claims against Mr. Swenson resolved in arbitration.   They were forced to do so when Mr. Swenson insisted on his right to arbitrate all of the Investors' claims and persuaded this Court, the Colorado District Court, and the Arbitrator that the Investors' claims were arbitrable.   The parties then proceeded to spend more than a year in an arbitration process that included five days of hearings, multiple orders and extensive briefing. If this Court now vacated the arbitration for failure to join DBSI, all of the time and resources the Investors spent proving their case in arbitration, while their case in federal court was on hold, would have been wasted.   At the same time, Mr. Swenson would gain an opportunity to escape an unfavorable judgment.   Because Mr. Swenson has (1) adopted two plainly different positions before this Court, (2) induced the Court to adopt the earlier of those positions, and (3) reversed this position in order to benefit himself and disadvantage the Investors unfairly, he is judicially estopped from objecting to the Arbitrator's exercise of jurisdiction over this dispute despite the absence of an allegedly indispensable party.   *See Data Mountain Solutions, Inc. v. Giordano*, 680 F.Supp.2d 110, 128-129 (D.D.C. 2010); *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) ("Judicial estoppel is

designed to prevent the perversion of the judicial process.")   Judicial estoppel bars

Mr. Swenson from claiming that the arbitration should be vacated because the

Investors failed to join DBSI entities in an arbitration that the Swensons, in their

individual capacities, petitioned this Court to order.[19]

    2.   *Title Insurance Action*

In his Supplemental Memorandum in Support of his Second Motion to

Vacate, Mr. Swenson faults the Investors for allegedly taking inconsistent positions

in this action and in a Title Insurance Action the Investors recently filed in Colorado

state court.   (Dkt. 129, pp. 6-8.)   Specifically, Mr. Swenson claims that the

Investors stated in the Title Insurance action that, in arbitration, they sought relief

against DBSI 2006 Secured Notes Corporation for "removal of the Undisclosed

---

19  Mr. Swenson suggests that, at the time he suggested to the Arbitrator the claims in the Investors' original complaint in Colorado District Court were arbitrable, he could not have known "that the Arbitrator would improperly hold him liable for claims against DBSI, Inc." as the "complaint *carved out claims against all other defendants because of the automatic stay* and states that the Investors will seek leave to bring additional claims against DBSI entities subject to the automatic stay."   (*Id*.) (emphasis in original). Although the original complaint carved out claims against other DBSI entities which were in bankruptcy, it did not carve out claims against DBSI E-470, as that entity was not in bankruptcy at the time the Investors' filed suit.   Mr. Swenson's suggestion that the original complaint carved out claims against *all other defendants* is simply not true.   In addition, Mr. Swenson suggests the "claims decided by the Arbitrator are not the claims in the complaint, which Mr. Swenson moved to have arbitrated."   (Dkt. 111, p. 8.) However, the Investors stated in the original complaint that the individual defendants (Mr. Swenson and his two sons) used DBSI E-470 as their alter ego.   (Dkt. 1, Ex. A, p. 4.)   The Investors also brought breach of contract and fraud claims against all three Swensons individually, as well as against DBSI E-470, in the original complaint.   (*Id*., pp. 25-27.) Mr. Swenson's allegation that the claims decided by the Arbitrator are not the claims in the complaint is thus inaccurate.

**MEMORANDUM DECISION AND ORDER - 52**

Lien." (*Id.*, p. 7.)   As such, Mr. Swenson argues, "the claim in the Title Insurance

Action that the relief sought was the removal of the Deed of Trust Lien admits that

DBSI was a necessary party."   (Dkt. 114-1, p. 4.)   However, in the Title Insurance

Action, the Investors did not characterize the arbitration as seeking relief against

DBSI.   Instead, the Investors stated the initial action they filed in Colorado District

Court, *Bushman Investment Properties, Ltd., et. al v. DBSI E-470 East LLC, et. al*,

case no. 09-cv-00674, was commenced in order to remove the undisclosed lien,

among other remedies.   (Dkt. 115, Ex. B, p. 3.)   DBSI E-470 was not in bankruptcy

at the time the Investors filed suit in Colorado District Court, and was included as a

party to the Colorado litigation.   DBSI E-470 then filed bankruptcy, and the

Swensons then moved in their individual capacities to dismiss or stay the Colorado

District Court case pending arbitration.   The Investors have not taken inconsistent

positions because their original suit was against both DBSI E-470 and the Swensons

in order to remove the undisclosed lien on the Property.   That Mr. Swenson

successfully obtained a stay of the Colorado case, in favor of an arbitration DBSI

E-470 could not be made a party to due to the bankruptcy stay, does not mean that

the Investors have taken inconsistent positions.   Moreover, as the Investors note,

Mr. Swenson argued during arbitration that the Investors were free to seek relief

against their title insurance company to the extent that the undisclosed lien somehow

affected their interests.   (Dkt. 54, p. 49.)   Mr. Swenson's attempt to characterize the Investors as somehow having taken inconsistent positions for suing their title insurer is disingenuous in light of such representations to the Arbitrator.

     3.  *Bankruptcy Stay*

     Mr. Swenson also argues both the 2011 and the 2012 Final Awards must be vacated because the arbitration constituted an improper attempt to pursue claims against DBSI entities, which were in bankruptcy at the time of the arbitration, by seeking relief from the Swensons, parties not subject to the automatic bankruptcy stay.   Mr. Swenson's argument with respect to the bankruptcy stay has several components.

     First, Mr. Swenson claims the Arbitrator exceeded his powers by hearing claims not properly in arbitration, as the only claims properly before the Arbitrator and not subject to the automatic stay were direct claims against the individual defendants, but the only claims the Arbitrator awarded damages on were direct claims against DBSI entities.   Thus, Mr. Swenson suggests the only claims he was held liable for—the Investors' claims against DBSI—were stayed and were not properly before the Arbitrator.    (Dkt. 100-1, pp. 14-15.)   This argument fails because the Arbitrator found Mr. Swenson personally liable for fraud.   (Dkt. 52-1, pp. 12-20.)   The Arbitrator determined Mr. Swenson committed fraud in at least

**MEMORANDUM DECISION AND ORDER - 54**

two ways: by misrepresenting facts and by failing to disclose facts he was obligated to disclose.   (*Id*., p. 12.)   This Court confirmed the Arbitrator's finding holding Mr. Swenson personally liable for fraud.   (Dkt. 78, pp. 15-23.)

Further, as previously discussed, the Investors raised breach of contract claims against all three Swensons in their original complaint.   The Swensons moved to arbitrate in their individual capacities, and the Arbitrator relied on the Swensons' representations that all of the Investors' claims were subject to arbitration.   (*See, e.g*., Dkt 106-4, letter from Mr. Swenson's counsel to Arbitrator stating, "As [Colorado District Court] Judge Krieger correctly noted when she found [the Investors'] claims were arbitrable, "all of the claims in the Complaint 'relate to' transactions contemplated in the Purchase Agreement… all of [the Investors'] claims are arbitrable under the arbitration agreement contained in the Purchase Agreement." )   For the reasons previously set forth, Mr. Swenson is estopped from arguing that the Arbitrator exceeded his authority by awarding damages on the claims Mr. Swenson petitioned to have arbitrated.   (*See also*, Dkt. 54, p. 46, Mr. Swenson's arbitration post-hearing brief stating, "[n]othing in the pleadings of the Bankruptcy Court is relevant to the elements of the claims [the Investors] have asserted in this action.").

**MEMORANDUM DECISION AND ORDER - 55**

Second, Mr. Swenson argues that, because neither DBSI E-470 nor DBSI Inc. participated in the arbitration due to the automatic bankruptcy stay, Mr. Swenson could incur inconsistent obligations.   For instance, Mr. Swenson—standing in the shoes of DBSI—could be held liable under the prospective damages award for the Investors' consensual foreclosure even though DBSI itself could not be liable for this same foreclosure.   (Dkt. 100-1, p. 16.)   However, given this Court's clarification of the Arbitrator's ruling with respect to the partial release, the Investors are not entitled to prospective damages for a Deed of Trust foreclosure unless the partial release is deemed invalid.   The "consensual" foreclosure Mr. Swenson references has been vacated by the Arapahoe County Court, and the Investors no longer have an incentive to consent to a Deed of Trust foreclosure unless the partial release is deemed invalid.   Mr. Swenson executed the partial release and is appropriately liable for a Deed of Trust foreclosure under both the 2011 Final Award and this Court's Order confirming the 2011 Final Award if the partial release is ultimately deemed invalid.

Mr. Swenson also claims:

> DBSI, in its bankrupt state, will receive a valuable piece of property due to the Investors' consensual foreclosure.   Mr. Swenson's damages will be increased on the theory that he and DBSI have no separate identity.   However, Mr. Swenson will not receive the land the Investors are giving up to DBSI in order to increase their damages

**MEMORANDUM DECISION AND ORDER - 56**

award.   This results in a windfall to DBSI and an unfair recovery
against Mr. Swenson.

(Dkt. 100-1, p. 16.)

This theory is also addressed by the Court's ruling with respect to the partial

release.   Specifically, DBSI will not receive the Property due to a Deed of Trust

foreclosure unless the partial release is first deemed invalid.   The Investors cannot

simply "give up" the Property to DBSI in order to increase their prospective

damages award.

Mr. Swenson also maintains that the 2011 Final Award creates inconsistent

obligations because he could be held liable once by the Investors in arbitration, and

again by the DBSI bankruptcy trustee.   (*Id.*, c*iting Zazzali v. Swenson*, Case

1:12-cv-00224-EJL-MHW (D. Id.)).   After DBSI, Inc. and other DBSI entities filed

bankruptcy during the economic downturn, a plan of reorganization was confirmed

in October of 2010, which authorized the creation of two trusts—an Estate Litigation

Trust and a Private Action Trust—to pursue claims on behalf of various creditors

and investors in DBSI entities.   *Zazzali*, Dkt. 256, p. 3.   The case was transferred to

this Court on May 10, 2012.   (*Id.*)   In *Zazzali*, the Trustee has raised various claims

arising from the federal RICO statute or Idaho's equivalent, claims arising under

federal securities laws or parallel state laws, claims for common law fraud and

fraudulent concealment, breach of fiduciary duty, civil conspiracy, and other related

**MEMORANDUM DECISION AND ORDER - 57**

causes of action.   (*Id.*)   However, the Investors have not assigned their claims to the *Zazzali* Private Actions Trust.   (Dkt. 105, pp. 11-12.)   Mr. Swenson cannot be held liable in *Zazzali* for the fraud and breach of contract at issue in this case because the Investors' claims are not a part of the *Zazzali* Private Action Trust.

Further, Mr. Swenson contends the Bankruptcy Court could determine that DBSI is not liable to the Investors despite the fact that the Arbitrator found that DBSI is liable to Investors.   (Dkt. 100-1, p. 16.)   Mr. Swenson notes that this inconsistent result appears to have occurred because the Bankruptcy Court recently expunged the Investors' bankruptcy claims—in the same amounts of the claims asserted here—finding that DBSI was not liable for those claims.   (*Id.*, *citing In re DBSI, Inc.*, Case No. 08-12687-PJW (D. Del. Bank. 2008), Dkt. No. 7634.))

However, the Arbitrator found Mr. Swenson liable for fraud.   An officer of a corporation who commits a tort is personally liable to the victim regardless of whether the corporation is itself liable.   *See, e.g., Vertrue Incorp. v. Meshkin*, 429 F.Supp.2d 479, 504 (D. Conn. 2006).    If a director or officer of a corporation commits or "participates in the commission of a tort, whether or not it is also by or for the corporation, he or she is liable to the injured third persons, and it does not matter what liability attaches to the corporation for the tort."   *18B Am.Jur. 2d Corporations § 1629* (2013).    The Bankruptcy Court's determination with respect

to the liability of DBSI is thus not relevant to Mr. Swenson's personal liability to the Investors.   A contrary rule "would enable a director or officer of a corporation to perpetuate flagrant injuries and escape liability behind the shield of his or her representative character, even though the corporation might be insolvent or irresponsible."  *Id*.

In addition to the aforementioned claimed "inconsistencies" created by the Arbitrator's ruling in alleged violation of the bankruptcy stay, Mr. Swenson's bankruptcy argument also contends that confirming the 2011 and 2012 Final Awards will allow the Investors to successfully "cut in line" against other creditors, contrary to one of the "fundamental purposes of bankruptcy."   (Dkt. 100-1, p. 17, *citing In re Conejo Enterprises, Inc*., 96 F.3d 346, 351 (9th Cir. 1996)).

An automatic bankruptcy stay protects both debtors and their creditors.   11 U.S.C. § 362(a).   The stay gives a "debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy."   *In re Conejo Enterprises*, 96 F.3d at 351.   The automatic stay also protects creditors; without it "certain creditors would be able to pursue their own remedies against the debtor's property.   Those who acted first would obtain payment of the claims in preference to and to the

detriment of other creditors.   Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally."   *Id*. at 352.

Here the Final Awards involve the Investors' claims against the Swensons, and not claims against DBSI, Inc., DBSI E-470, or any other entity subject to the automatic bankruptcy stay either now or at the time of the arbitration.   The Investors are not attempting to "cut in line" in front of DBSI's creditors, as the Investors are seeking to enforce the judgment that was awarded by the Arbitrator, and confirmed by this Court, against the Swensons.   The automatic stay of claims against DBSI entities does not also stay claims against DBSI's officers or directors.[20]

Finally, Mr. Swenson argues claims against individuals based on an "alter ego" theory of liability, such as those here, are the property of the bankruptcy estate. (Dkt. 100-1, p. 17.)   Mr. Swenson contends only the trustee, and not the Investors, has standing to pursue alter ego theories on behalf of the bankruptcy estate.   (*Id*.) There is a split of authority as to whether alter ego actions become the property of a corporate debtor's estate upon the debtor's filing in bankruptcy.   *9A Am. Jur. 2d Bankruptcy § 1264* (2013).   In one view, an alter ego action is personal to each of the corporation's creditors, and is not the property of the estate. *In re Ozark*

---

[20]  As such, the Arbitrator did not violate the automatic bankruptcy stay, and his rulings were not inconsistent with public policy, as Mr. Swenson suggests. (Dkt. 100, p. 17.)

*Restaurant Equip. Co., Inc*., 816 F.2d 1222, 1225 (8th Cir. 1987) (a trustee does not have standing to pursue alter ego claims for creditors, because "[g]enerally, the corporate veil is never pierced for the benefit of the corporation or its stockholders.").   Contrary authority holds that, upon a corporate debtor's filing in bankruptcy, a trustee has standing to bring the alter ego claim to collect estate assets and that, in such cases, the trustee is seeking to recover property of the estate, and not that of individual creditors.   *Towe v. Martinson*, 195 B.R. 137, 140 (D. Mont. 1996).   A third, dominant, view "holds that whether an alter ego action will be included in a corporate debtor's estate depends on whether state law characterizes such an action as a creditor remedy or a corporate right."   *9A Am. Jur. 2d Bankruptcy § 1264* (2013).   Under this view, if the "state law characterizes an action to disregard a corporate entity as an extraordinary remedy available to individual creditors as a last resort, the action will not be included in the corporate debtor's estate."   *Id*.   (*citing Louisiana World Exposition v. Federal Ins. Co*., 858 F.2d 233 (5th Cir. 1988) (*holding modified on other grounds by, In re Dur Jac Ltd*., 254 B.R. 279 (M.D. Ala. Bank. 2000)).   However, "where state law characterizes an alter ego claim as a corporate right, the action will be considered property of the corporate debtor's estate and the automatic stay will prevent individual creditors

from pursuing the action."   *Id*. (*citing In re Mortgage America Corp*., 714 F.2d 1266 (5th Cir. 1983)).

Mr. Swenson suggests that under either Delaware or Idaho law, the bankruptcy trustee properly exercises control over alter ego claims.   (Dkt. 111, pp. 9-10.)   However, the Court finds further consideration is unwarranted because the law is not explicit with respect to this issue, and, indeed, varies by jurisdiction.   To "rise to the level of manifest disregard the governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable." *Collins v. D.R. Horton, Inc*., 505 F.3d 874, 879-880 (9th Cir. 2007).   Further, the Court need not further review this claim because Mr. Swenson failed to suggest to the Arbitrator that the Investors' alter ego theories belong to the estate.   A party cannot "voluntarily engage in the arbitration of the issues submitted to the arbitrator and then attack the award on grounds not raised before the arbitrator."   *Int'l Chem. Workers Union, Local No. 566 v. Mobay Chem. Corp*., 755 F.2d 1107, 1112 (4th Cir. 1985); *Sheet Metal Workers Intern. Ass'n., Local Union No. 33 v. Beckley Mechanical, Inc*., 803 F.Supp.2d 511, 519 (S.D.W.Va. 2011) (employer waived arguments that arbitration process was defective by failing to raise them before the arbitrator).   As the court explained in *MetLife Securities Inc. v. Bedford*, 456 F.Supp.2d 468, 473 (S.D.N.Y. 2006):

**MEMORANDUM DECISION AND ORDER - 62**

> [I]n applying manifest disregard of the law… an arbitrator is ordinarily assumed to be a blank slate unless educated in the law by the parties. Therefore, in determining what legal principals were known to the arbitrators for the purposes of applying the manifest disregard of the law test, the Court must impute to the arbitrators only knowledge of governing law identified by the parties to the arbitration.

(internal quotations and citations omitted).

As Mr. Swenson failed to raise his theory that the Investors' alter ego claims are the property of the DBSI estate—either before the Arbitrator, or in his First Motion to Vacate—there is no basis for this Court under the Federal Arbitration Act to vacate the 2011 Final Award with respect to this issue.   *See also Black Box Corp. v. Markham*, 127 Fed.Appx. 22, 25 (3rd Cir. 2005) ("To the extent that the arbitration panel was not made aware of the governing law that Black Box now argues is controlling in this matter, it is difficult to see how the panel refused to apply or otherwise ignored this law.").

### C. Clarifying "contingencies"

In his Second Motion to Vacate, Mr. Swenson suggests that judgment cannot be entered on the 2011 and 2012 Final Awards because the prospective damages award is too indefinite to be enforced.   (Dkt. 100-1, p. 18.)   However, the Court has already determined the Arbitrator did not manifestly disregard Idaho law by awarding "potential prospective" damages to the Investors, and confirmed all aspects of the Arbitrator's prospective damages award with the exception of the tax

**MEMORANDUM DECISION AND ORDER - 63**

lien issue.   (Dkt. 78, pp. 25-29.)   The Court need not revisit the arguments it has

already rejected with respect to the Arbitrator's prospective damages award.

Mr. Swenson also requests, if the Court confirms the 2012 Final Award, that the

Court provide guidance on several "outstanding contingencies."   (Dkt. 100-1, p.

19.)   Given the confusion elicited by the Arbitrator's clarification upon remand, and

with the hope of preventing further litigation, the Court will provide such guidance.

Specifically, in light of the Arbitrator's 2011 Final Award and the analysis provided

in this opinion, prospective damages due to foreclosure on the Deed of Trust are

only triggered if the Arbitrator was mistaken and the partial release is deemed

invalid.   Prospective damages are not triggered due to foreclosure of the Deed of

Trust unless the release is invalidated in the bankruptcy proceedings.

The Court has also confirmed the Arbitrator's finding, in the 2012 Final

Award, that, as between Mr. Swenson and the Investors, the Investors are not

responsible for the unpaid Property taxes unless they first receive actual damages

from Mr. Swenson of $458,146.81.   If the Investors receive such damages and do

not then apply $443,479.71 of this amount toward the Arapahoe County tax lien, Mr.

Swenson will not be liable for prospective damages.   If the DBSI Liquidating Trust

pays DBSI's share of the taxes on the Property, Mr. Swenson will not be liable to the

Investors for DBSI's share of the taxes.   If, however, DBSI Liquidating Trust does

not pay its share of the taxes, Mr. Swenson is responsible for this amount in order to avoid prospective damages in the event the Property is tax forfeited.   Finally, pursuant to both the 2011 and the 2012 Final Award, prospective damages are triggered only in the event the Property is tax forfeited, as described above, or if the Investors lose their interest in the Property because the partial release is deemed invalid and the Deed of Trust is foreclosed.   Prospective damages are only due in the event of either of these contingencies.

### D. Post Award, pre-judgment interest

In conjunction with their Motion for Entry of Final Judgment, the Investors seek post-award, pre-judgment interest against all three Swensons beginning on January 24, 2012, the date of the Arbitrator's modification of the 2011 Final Award, through the date of entry of partial or final Judgment.   (Dkt. 96.)   In the absence of a statutory directive, the decision to award prejudgment interest in cases arising under federal law is within the discretion of the district court.   *Waterside Ocean Navigation Co. v. Int'l Navigation Ltd.*, 737 F.2d 150, 153 (2d Cir. 1984); *see also Domke on Commercial Arbitration*, §44.1 (3d ed.) ("Generally, the court has discretion to add interest from the date of the award.").   Whether interest will be awarded is generally "a question of fairness, lying within the court's sound

discretion, to be answered by balancing the equities." *Wessel v. Buhler*, 437 F.2d 279, 284 (9th Cir. 1971).

The Investors claim pre-judgment interest is appropriate in this case because the Swensons' attempts to delay and frustrate enforcement of the 2011 Final Award have been in excess of a good-faith attempt to assert legal rights.   (Dkt. 108, p. 1.) However, this Court partially granted the Swensons' First Motion to Vacate.   The Swensons were entitled to seek to vacate what this Court found to be a partially ambiguous award.   Moreover, the Swensons' actions following the Arbitrator's 2012 Final Award can hardly be characterized as bad faith considering the material change the 2012 Final Award made to the Investors' right to collect prospective damages in the event of a Deed of Trust foreclosure.   Like the Swensons' First Motion to Vacate, this Court has partially granted Mr. Swenson's Second Motion to Vacate.

In addition, Mr. Swenson's Second Motion to Vacate and Supplemental Briefing were largely engendered by the Investors' conduct in consenting to foreclosure of the Property following the 2012 Final Award, and in failing to advise the Arapahoe County Court of the Arbitrator's finding regarding the partial release. Further, although the Court ultimately rejected Mr. Swenson's indispensable party and bankruptcy arguments, such arguments were not frivolous.   Finally, the

**MEMORANDUM DECISION AND ORDER - 66**

Arbitrator denied the Investors' request for pre-judgment interest in the 2011 Final Award, stating, the Investors "seek prejudgment interest on their actual damages under Idaho code § 28-22-104(1).   This statute, however, does not apply to any of the claims upon which [the Investors'] prevailed."   (Dkt. 52-2, p. 5.)   This Court confirmed all portions of the 2011 Final Award, including the Arbitrator's decision not to award prejudgment interest.   In light of these facts, the equities do not favor awarding prejudgment interest in this case.   The Investors' request for prejudgment interest is accordingly **DENIED**.

## ORDER

**IT IS ORDERED**:

1.   Petitioner Douglas Swenson's Motion to Stay Action on Respondents' Proposed Order until October 27, 2012, or, in the alternative, Motion for Status Conference to set Briefing Schedule (**Dkt. 86**) is **MOOT**.

2.   Petitioners David Swenson and Jeremy Swenson's Motion to Stay Action on Respondents' Proposed Order until October 27, 2012, or, in the alternative, Motion for Status Conference to set Briefing Schedule (**Dkt. 88**) is **MOOT**.

3.   Respondents' Motion for Entry of Final Judgment on Arbitration Award as Clarified, or Alternatively, for Entry of Partial Final Judgment on

Previously Confirmed Portions of the Arbitration Award (**Dkt. 90**) is **GRANTED** in part and **DENIED** in part.   The Court enters **PARTIAL FINAL JUDGMENT** on all portions of the 2011 Final Award the Court previously confirmed.   Judgment of actual damages is entered in the amount of **$458,146.81** against Douglas Swenson, David Swenson, and Jeremy Swenson, jointly and severally.   Judgment for attorney fees, arbitration fees, costs, and expenses in an additional amount of **$457,995.59** is entered against Douglas Swenson.   The **TOTAL PARTIAL FINAL JUDGMENT** is **$916,142.40**.   The Court **CONFIRMS** the 2012 Final Award with respect to the Arbitrator's findings regarding Mr. Swenson's responsibility for taxes on the Property. However, the Court **VACATES** the portion of the 2012 Final Award which eliminates the contingency, provided for in the 2011 Final Award and previously confirmed by this Court, that prospective damages will be available in the event of a Deed of Trust foreclosure *only* if the partial release is deemed invalid by the Bankruptcy Court.   Because the Investors' ability to collect prospective damages is contingent on either a finding by the Bankruptcy Court that the partial release is invalid, or tax forfeiture of the Property, the Court will administratively terminate this

case and grant the parties leave to reopen the case upon good cause shown, should either of the contingencies required for the Investors to be entitled to prospective damages occur.  **IT IS HEREBY ORDERED** that the clerk administratively terminate this action, without prejudice to the right of the parties to reopen the proceedings for good cause shown, for the entry of any stipulation or order, or for any other purpose required to obtain a final determination of the prospective damages portion of this litigation.

4. Respondents' Motion for Post-Award, Prejudgment Interest (**Dkt. 96**) is **DENIED**.

5. Petitioner Douglas Swenson's Motion to Vacate, Modify or Correct (**Dkt. 100**) is **GRANTED** in part and **DENIED** in part.  The Court **VACATES** the portion of the 2012 Final Award which eliminates the contingency regarding the partial release on the Investors' right to collect potential prospective damages.  The Court otherwise **DENIES** Mr. Swenson's Motion to Vacate, Modify or Correct.

SO ORDERED.

DATED: July 22, 2013

Edward J. Lodge
United States District Judge